IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT, *et. al.*, <br><br> Federal Defendants, <br><br> and <br><br> GASCO ENERGY, INC. <br><br> Intervenor-Defendant. | **MEMORANDUM DECISION AND ORDER DENYING INTERVENOR-DEFENDANT GASCO ENERGY, INC'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD (ECF NO. 87)** <br><br><br> Case No. 2:13-cv-01060-EJF <br><br> Magistrate Judge Evelyn J. Furse |

Intervenor-Defendant Gasco Energy, Inc. ("Gasco") moves the Court to supplement the administrative record with the 2014 Uinta Basin Winter Ozone Study, Final Report ("2014 Ozone Study") (Mot. to Suppl. Admin. R. ("Mot."), ECF No. 87.) Having considered the briefing on this Motion, the Court DENIES Gasco's Motion because the "new evidence" exception to supplementing the record does not encompass the 2014 Ozone Study.[1]

### FACTUAL AND PROCEDURAL HISTORY

Southern Utah Wilderness Alliance, The Wilderness Society, and Natural Resources Defense Council (collectively, "SUWA") challenge a decision made by the U.S. Bureau of Land

---

[1] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court finds oral argument unnecessary and will make its decision on the basis of the written memoranda.

1

Management ("BLM"), U.S. Department of the Interior, Jenna Whitlock, Jerry Kenczka, and Kent Hoffman (collectively, "Federal Defendants").  Specifically, SUWA challenges the BLM's decision to affirm the Vernal Field Office's finding of no significant impact regarding Gasco's proposal to drill sixteen gas wells ("Sixteen-Well DR/FONSI").  (Mem. Dec. & Order Granting in Part & Denying in Part Defs.' & Intervenor-Def.'s Mots. to Dismiss 19, ECF No. 71.)  On February 19, 2014, the Court granted Gasco's motion to intervene.  (Docket Text Order, ECF No. 17.)  On September 4, 2015, Gasco filed the underlying motion to supplement the record with the 2014 Ozone Study, contending that the study "confirms BLM's determinations that state and federal air quality standards will not be affected by the Gasco EIS and 16-Well EA."  (Mot. 2, ECF No. 87.)  SUWA and the Federal Defendants both opposed the Motion, contending that BLM did not consider the 2014 Ozone Study in its decision and that the study does not meet any of the exceptions to the general rule precluding addition of post-decisional data to the record. (Opp'n to Mot. to Suppl. Admin. R. ("SUWA Opp'n") 2, ECF No. 88; Mem. in Opp'n to Mot. to Suppl. Admin. R. ("Fed. Opp'n") 3, ECF No. 89.)

## ANALYSIS

The Administrative Procedure Act ("APA") limits judicial review of an agency action to reviewing the administrative record.  See 5 U.S.C. § 706 (stating "the court shall review the whole record or those parts of it cited by a party"); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1579-80 (10th Cir. 1994) (warning of impermissibility of reliance on evidence outside the administrative record).  The administrative record includes the full record present before all decision-makers at the time of their decision, as opposed to a new record made initially in the reviewing court.  Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993).  "The complete

administrative record consists of all documents and materials directly and indirectly considered by the agency." *Id.*

As a preliminary matter, Gasco claims that the Federal Defendants' emphasis on the 2014 Ozone Study's post-decisional status "mistakes Gasco's motion to supplement the record with an action in which a party is claiming that the record is incomplete." (Gasco's Reply in Supp. of Mot. to Suppl. Admin. R. ("Reply") 3, ECF No. 90.)  Gasco argues that "the issue of whether the agency considered the document is only relevant in an action challenging the completeness of the record." (*Id.*)  Gasco draws a distinction between issues of completeness and supplementation of the record.  By definition, the complete record "consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches*, 994 F.2d at 739.  Documents and materials not considered by the agency in its decision do not form part of the complete record. *Id.*  Because the BLM did not consider the 2014 Ozone Study in its decision, the study did not become part of the complete record.  (Mot. 2, ECF No. 87.)  Thus, the Court focuses solely on whether the 2014 Ozone Study falls into one of the exceptions to the general rule precluding supplementation of the record.

**A. Federal Courts Disfavor Supplementing the Record.**

The Supreme Court has consistently held that, ordinarily, "review of administrative decisions is to be confined to 'consideration of the decision of the agency . . . and of the evidence on which it was based.'" *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)); *see also Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985) (holding that courts must limit their review of an agency's action to "the basis articulated by the agency and on the evidence and proceedings before the agency at the time it acted").  As a result, in 1985 the Tenth Circuit held

3

in *American Mining* that "any exception to this general rule against the use of extra-record materials must be extremely limited." *Am. Mining*, 772 F.2d at 626. The court identified five situations where parties may present extra-record evidence: (1) when the agency does not adequately explain its action and the reviewing court cannot properly review the action without considering the extra material; (2) when "the record is deficient because the agency ignored relevant factors it should have considered in making its decision"; (3) when "the agency considered factors that were left out of the formal record"; (4) when "the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues"; and (5) when "evidence coming into existence after the agency acted demonstrates that the actions were right or wrong." *Id.* The *American Mining* court considered the extra-record references in its case as citations to scientific treatises not requiring inclusion in the administrative record. *Id.* at 627.

The BLM argues that *Olenhouse* limited these exceptions when it warned against reliance on materials outside of the administrative record in administrative review cases. (Fed. Opp'n 7-8, ECF No. 89.) The Tenth Circuit decided *Olenhouse* in 1994. In 2001, the Tenth Circuit expressly recognized these five exceptions again as permitting a court to supplement the record, citing *American Mining* as good law. *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n.1 (10th Cir. 2001). Given the importance of *Olenhouse*, this Court can only conclude that the *Custer County* court had full knowledge of *Olenhouse* in reaching its decision. Therefore, the Court concludes *Olenhouse* did not eliminate these five exceptions.

Out of these five possible exceptions, Gasco only relies on the fifth exception (the "new evidence" exception) in support of its motion. (Mot. 2, ECF No. 87; Reply 5, ECF No. 90.) This exception in the Tenth Circuit originates in *American Petroleum Institute v. EPA*, where the Tenth

Circuit admonished courts from ignoring events after promulgation that indicate "the truth or falsity of agency predictions." 540 F.2d 1023, 1034 (10th Cir. 1976). In *American Petroleum*, a group of petroleum refineries challenged the EPA's 1977 regulations regarding limitations for Total Suspended Solids and Oil and Grease on the basis that the EPA required the use of granular media filtration, a technology that they found neither practicable nor available at the time. *Id.* The refineries objected to the EPA's use of data obtained after promulgation to support the practicality and availability of the technology. *Id.* The court rejected this argument, explaining that "[t]he new data was not the basis for the regulations[,] [but] serves to establish that the EPA technologies are both practicable and currently available." *Id.*

The *American Petroleum* court cited a footnote from *Amoco Oil Co. v. EPA*, 501 F.2d 722 (D.C. Cir. 1974) in support, which begins by noting that "[a] reviewing court must tread cautiously in considering events occurring subsequent to the promulgation of a rule." *Id.* at 729 n.10. Because "such events did not inform the agency decision-making . . . , information on such events reaches a reviewing court untested by any procedures, such as an administrative hearing, designed to assure its accuracy and completeness." *Id.* Following this reasoning, the *Amoco Oil* court declined to allow supplementation of the record with a technical study submitted to the EPA after promulgation. *Id.* However, the court allowed supplementation with respect to the testimony of two automaker representatives before a congressional committee. *Id.* Although the testimony occurred after promulgation and did not factor into the EPA's original decision, the court explained that "the testimony bears directly upon the plausibility of certain predictions made by the Administrator in promulgating the Regulations." *Id.* Moreover, the Administrator formally reaffirmed these predictions subsequent to the testimony. *Id.* The court concluded that when events have "progressed sufficiently to indicate the truth or falsity of agency predictions,"

a court need not "blind itself to such events, at least when the events are evidenced by public testimony given to a governmental body." Id.

### B. The "New Evidence" Exception Does Not Apply in This Case.

Based on the Court's review of Tenth Circuit case law, the Court concludes that the "new evidence" exception to the general rule prohibiting judicial consideration of extra-record evidence does not apply to the matter at hand. The *American Petroleum* court grounded its reasoning, applying the "new evidence" exception to uphold an agency decision, in *Amoco Oil*. Am. Petroleum Inst., 540 F.2d at 1034. In *Amoco Oil*, the D.C. Circuit allowed supplementation of the record with new evidence of testimony given to a congressional committee because the testimony bore directly upon the plausibility of certain predictions made by the administrator. Amoco Oil, 501 F.2d at 729 n.10. Notably, however, the court rejected a technical study submitted to the EPA after promulgation because the EPA did not consider the study in its decision. Id.

Gasco argues that the "new evidence" exception should apply in this case to allow it to supplement the record with the 2014 Ozone Study. (Mot. 4, ECF No. 87.) First, the Court notes that the 2014 Ozone Study constitutes a post-promulgation technical study similar to the one the *Amoco Oil* court declined to allow into the record. See Amoco Oil, 501 F.2d at 729 n.10. The Court finds this fact important because the "new evidence" exception in the Tenth Circuit has its roots in *Amoco Oil*, a D.C. Circuit case. See Am. Mining Cong., 772 F.2d at 626 (citing Am. Petroleum Inst., 540 F.2d at 1034 (citing Amoco Oil, 501 F.2d at 729 n.10)).

Moreover, *American Petroleum* requires the new evidence to show whether the predictions underlying an agency action proved true or false. Am. Petroleum Inst., 540 F.2d at 1034. Gasco fails to articulate how the 2014 Ozone Study confirms the BLM's Sixteen-Well

DR/FONSI.  Gasco asserts that the 2014 Ozone Study "provides greater clarity about winter ozone formation in the Uinta Basin, addresses some uncertainties identified in the 2012 report, and provides a more comprehensive assessment of the sources and process that in some winters give rise to formation of ozone."  (Mot. 3, ECF No. 87.)  Gasco acknowledges that "significant uncertainties" regarding winter ozone formation remain even after the findings in the 2014 Ozone Study.  (Mot. 3-4, ECF No. 87.)  Hence, at best, the 2014 Ozone Study could only bolster the BLM's judgment call given the "complexity of winter ozone formation in the Uinta Basin and the challenges of designing an appropriate policy response."  (Reply 4, ECF No. 90.)

Additional support for a judgment call does not equate to proving the truth or falsity of a prediction.  Gasco's purported showing falls short of the requisite level of certainty required to qualify for the "new evidence" exception.  A mere demonstration that the BLM's actions were appropriate or reasonable does not meet this exception; the 2014 Ozone Study must demonstrate whether the BLM's actions were right or wrong to warrant its addition to the administrative record.  See *Am. Mining Cong.*, 772 F.2d at 626 (framing the exception as "evidence coming into existence after the agency acted demonstrat[ing] that the actions were right or wrong"); *Am. Petroleum Inst.*, 540 F.2d at 1034 (holding that post-promulgation events must "indicat[e] the truth or falsity of agency predictions" to merit consideration).  The 2014 Ozone Study concedes that the 2012, 2013, 2014 studies "provided valuable information for the development of improved emission inventories and model simulations of winter episodes, thereby contributing to the scientific foundations needed to develop an effective air quality management plan for the Basin."  (2014 Ozone Study ES-3, ECF No. 87-1.)  The Study further notes, "[d]iscrepancies between current emission estimates and observed pollutant concentrations have been noted and

7

are being further investigated." *Id.*  These conclusions do not provide the type of firm evidence contemplated by the "new evidence" exception.

By contrast, *SUWA v. Norton* serves as an example in which a district court in Utah invoked the "new evidence" exception to admit extra-record evidence.  277 F. Supp. 2d 1169, 1175-76 (D. Utah 2003), *dismissing appeal*, 116 Fed. App'x 200 (10th Cir. 2004), *vacating original decision as moot*, No. 2:02-cv-01118, 2004 WL 2827894 (D. Utah Nov. 30, 2004). There, the BLM imposed several mitigation measures as part of authorizing defendant-intervenor Veritas's project to conduct oil and gas exploration in the Uintah Basin.  *Id.* at 1174-75.  Despite these mitigation measures, SUWA challenged the BLM's approval of the Veritas project.  *Id.* at 1175.  In support of the BLM's authorization, Veritas moved to supplement the record with "photographs and other documents that have come into existence after the [p]roject began." *Id.* After citing *Custer County* for the validity of the "new evidence" exception, the court admitted the extra-record evidence on the basis that the evidence "shed[s] light on whether the BLM appropriately evaluated the mitigation measures."  *Id.* at 1176.  The Court specifically limited consideration of such evidence "to the extent that they demonstrate whether the BLM's evaluation of the remedial measures at issue was right or wrong."  *Id.* at 1175.  A photograph of a remedial measure provides very different evidence than a study that recommends further study.

Finally, nothing indicates that the BLM formally reaffirmed its predictions regarding the effects of Gasco's project on air quality in light of the 2014 Ozone Study or adopted the findings of the study in any way.  See *Amoco Oil,* 501 F.2d at 729 n.10 (allowing supplementation of post-promulgation testimony regarding the plausibility of certain predictions made by the administrator in part because the administrator formally reaffirmed these predictions).  Without a more definitive showing that the BLM adopts the 2014 Ozone Study and that the study actually

proves the accuracy of the BLM's decision in some way, rather than merely supporting its reasonableness, the Court will not apply the "new evidence" exception to allow supplementation of the administrative record.

## CONCLUSION

Because the 2014 Ozone Study does not prove the truth or falsity of the BLM's decision but rather merely supplements its analysis, the Court DENIES Gasco's Motion to supplement the record.

DATED this  5th   day of February, 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge